IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| James Oscar Douglas, Jr., | ) | C/A No. 8:13-cv-01293-MGL-JDA |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Warden Dunlap, Walden Correctional | ) | |
| Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

This matter is before the Court on a motion for summary judgment filed by Respondent.  [Doc. 20.]  Petitioner, proceeding pro se, is a state prisoner who seeks relief under 28 U.S.C. § 2254.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on May 7, 2013.[1]  [Doc. 1.]  On September 20, 2013, Respondent filed a motion for summary judgment and a return and memorandum to the Petition.  [Docs. 20, 21.]  On September 23, 2013, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the summary judgment procedure and of the possible consequences if he failed to adequately respond to the motion.  [Doc. 22.]  On October 25 and November 4, 2013, Petitioner filed responses in opposition to the motion for summary judgment.  [Docs. 26, 31.]

---

[1] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court.  *See Houston v. Lack*, 487 U.S. 266, 270 (1988).  Accordingly, construing the filing date in the light most favorable to Petitioner, this action was filed on May 7, 2013.  [Doc. 1 at 14 (Petition, signed by Petitioner on May 7, 2013).]

Having carefully considered the parties' submissions and the record in this case, the Court recommends Respondent's motion for summary judgment be granted and the Petition be denied.

## **BACKGROUND**

Petitioner is presently confined in the South Carolina Department of Corrections at Walden Correctional Institution pursuant to orders of commitment of the Chester County Clerk of Court. [Doc. 1; *see also* Docs. 34, 35 (notices of changes of address to Trenton Correctional Institution and back to Walden Correctional Institution.] In January 2002, Petitioner was indicted for first degree burglary and assault and battery with intent to kill. [App. 382–85.[2]] On January 7, 2003, represented by Yale Zamore ("Zamore"), Petitioner proceeded to a jury trial. [App. 1–220.] On January 8, 2003, Petitioner was found guilty of first degree burglary and the lesser included offense of assault and battery of a high and aggravated nature. [App. 212.]. On the same day, Petitioner was sentenced to twenty-one years imprisonment on the first degree burglary charge and ten years imprisonment on the assault and battery of a high and aggravated nature charge, the sentences to run concurrent. [App. 218.]

**Direct Appeal**

Petitioner timely filed a notice of appeal. On October 16, 2003, Daniel T. Stacey of the South Carolina Office of Appellate Defense filed an initial brief on Petitioner's behalf. [Doc. 21-6.] The brief raised the following issue:

---

[2]The Appendix can be found at Docket Entry Numbers 21-1 through 21-3.

> Whether the court erred when it permitted the solicitor to argue outside the facts of record and the inferences which might be drawn from them?

[*Id.* at 4.]  The State filed its final brief on March 9, 2004.[3]  [Doc. 21-7.]  On November 30, 2004, the South Carolina Court of Appeals filed an unpublished opinion affirming the conviction.  [Doc. 21-8.]  Remittitur was issued on December 16, 2004.  [Doc. 21-9.]

**PCR Proceedings**

Petitioner, proceeding pro se, filed an application for post-conviction relief ("PCR") on August 26, 2005.  [App. 241–47.]  Petitioner alleged he was being held in custody unlawfully based on the following grounds, quoted substantially verbatim:

> Ineffective Assistance of Counsel; Lack of Subject Matter Jurisdiction; "Newly Discovered Evidence"

[*Id.*]  Petitioner alleged the following supporting facts, quoted substantially verbatim, in support of the grounds:

> Attorney failed to investigate case before trial, failed to subpoena witness (police officer) to testify in the Petitioner[']s trial which testimony would have proved Petitioner[']s innocen[ce]; defective indictments.

[*Id.*]  Petitioner filed amended PCR applications on July 9, 2007 and July 27, 2007 [App. 248–55] and multiple additions to the amended PCR application on July 27, 2007; August 7, 2007; January 7, 2008; and February 15, 2008  [App. 256–74].  In the amended applications and the additions to the amended PCR applications, Petitioner was represented by Charles T. Brooks, III ("Brooks"), and raised a *Brady* violation and an argument regarding the solicitor's closing arguments. [*Id.*]  Petitioner filed a request for

---

[3]A final brief may have been submitted on Petitioner's behalf on March 11, 2004.  [App. 223–28 (document entitled "Final Brief of Appellant," dated March 11, 2004, with missing pages and no signature).]

discovery on September 17, 2007 [App. 275–76], to which the State filed a return on September 24, 2007 [App. 277–80], and Petitioner filed an amendment on October 25, 2007 [App. 281–83].  The State filed a return to the PCR application on January 18, 2006. [App. 284–89.]

An evidentiary hearing was held on August 24, 2009, at which Petitioner was represented by Brooks.  [App. 290–370.]  On October 18, 2009, the PCR court issued an order denying and dismissing the PCR application with prejudice.  [App. 371–80.]

A notice of appeal was timely filed.  [App. 381.]  On August 4, 2010, Robert M. Pachak ("Pachak") of the South Carolina Commission on Indigent Defense filed on Petitioner's behalf a petition for writ of certiorari in the South Carolina Supreme Court. [Doc. 21-10.]  The petition asserted the following issues:

> I.     Whether the PCR court erred in using an after discovered evidence test on Brady violations at petitioner's trial where two policemen failed to disclose that witnesses at the scene identified the suspects of a home invasion as being from Edgemoor in Chester County when petitioner was from Rock Hill in York County?
>
> II.    Whether trial counsel was ineffective in failing to learn from two police officers that witnesses at the scene of a home invasion identified the suspects as being from Edgemoor in Chester County when petitioner was from Rock Hill in York County?

[*Id.* at 3.]  The State filed a return on November 19, 2010.  [Doc. 21-11.]  The court denied the petition on March 20, 2013 [Doc. 21-12] and remitted the matter to the lower court on April 15, 2013 [Doc. 21-13].

**Petition for Writ of Habeas Corpus**

Petitioner filed this Petition for writ of habeas corpus on May 7, 2013.  [Doc. 1.]

Petitioner raises the following grounds for relief, quoted substantially verbatim, in his

Petition pursuant to 28 U.S.C. § 2254:

> **GROUND ONE:**    A Brady violation
>
> *Supporting facts*:    I was found guilty during my jury trial January 7–8, 2003.  My co-defendant was found not guilty during his jury trial April 21–22, 2004.  Officer Larry Thompson was subpoenaed during my co-defendant[']s trial to testify of the exculpatory evidence taken from the victim on the crime scene September 1, 2001.  Officer Larry Thompson's testimony caused Detective Berley McDaniels to testify to the truth during my co-defendant[']s trial, that he knew of the exculpatory evidence taken from the victim on the crime scene. Detective Berley McDaniels testified against me in 2003, but he did not disclose the withheld evidence.
>
> **GROUND TWO:**    Ineffective assistance of counsel  for failure to investigate and subpoena a material witness, Officer Larry Thompson, to testify on my behalf.
>
> *Supporting facts*:    I was found guilty in 2003.  My co-defendant was found not guilty in 2004 due to his lawyer conducting a thorough investigation.  He spoke with one of the 1st officers who arrived on the crime scene September 1, 2001, Officer Larry Thompson, and he found out that the victim had called out other people[']s names to have committed this crime.  My co-defendant[']s lawyer subpoenaed Officer Larry Thompson to testify to the truth of the crime scene, and my co-defendant was found not guilty during his jury trial April 21–22, 2004. My lawyer did not conduct a thorough investigation, and he did not subpoena Officer Thompson.

5

[Doc. 1.]  As stated, on September 20, 2013, Respondent filed a motion for summary judgment.  [Doc. 20.]  On October 25, 2013 and November 4, 2013, Petitioner filed responses in opposition.  [Docs. 26, 31.]  Accordingly, the motion is ripe for review.

## APPLICABLE LAW

### Liberal Construction of Pro Se Petition

Petitioner brought this action pro se, which requires the Court to liberally construe his pleadings.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).  Pro se pleadings are held to a less stringent standard than those drafted by attorneys.  *Haines*, 404 U.S. at 520.  Even under this less stringent standard, however, the pro se petition is still subject to summary dismissal.  *Id.* at 520–21.  The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so.  *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).  A court may not construct the petitioner's legal arguments for him.  *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993).  Nor should a court "conjure up questions never squarely presented."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  *Id.* at 324.  Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue.  *Id.*  Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  Further, Rule 56 provides in pertinent part:

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**Habeas Corpus**

### *Generally*

Because Petitioner filed the Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,* 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Williams v. Taylor*, 529 U.S. 362, 410 (2000).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011).  Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

### *Procedural Bar*

Federal law establishes this Court's jurisdiction over habeas corpus petitions.  28 U.S.C. § 2254.  This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim.  *Id.*  The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts.  A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

*Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)    (I) there is an absence of available State corrective process; or
>>
>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.  The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies.  *Id.* § 2254(b)(1)(A).  "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court."  *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997).  Thus, a federal court may

consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[4] Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts. For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment. S.C. App. Ct. R. 203(b)(2), (d)(1)(B). A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir.

---

[4]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar. 589 F.3d at 162–65. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

1977).  Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the Supreme Court actually reached the merits of the claim.

*Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts.  In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition.  *See Smith v. Murray*, 477 U.S. 527, 533 (1986).  The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts.  *See id.*  Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion.  *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time.  *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991).  Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court.  S.C. App. Ct. R. 203(d)(3), 243.  If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also*

12

*Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995).  As the United States Supreme

Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for

noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged

constitutional violation[,]'" the federal court may consider the claim.  *Smith*, 477 U.S. at 533

(quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)).  When a petitioner has failed to

comply with state procedural requirements and cannot make the required showing of cause

and prejudice, the federal courts generally decline to hear the claim.  *Murray v. Carrier*, 477

U.S. 478, 496 (1986).  Further, if the petitioner does not raise cause and prejudice, the

court need not consider the defaulted claim.  *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is

precluded by state rules from returning to state court to raise the issue, he has procedurally

bypassed his opportunity for relief in the state courts and in federal court.  *Coleman v.

Thompson*, 501 U.S. 722, 731–32 (1991).  Absent a showing of cause and actual

prejudice, a federal court is barred from considering the claim.  *Wainwright*, 433 U.S. at 87.

In such an instance, the exhaustion requirement is technically met, and the rules of

procedural bar apply.  *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d

at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v.*

13

*Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### *Cause and Actual Prejudice*

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

## <u>DISCUSSION</u>

### No Procedurally Barred Claims

Procedural default is an affirmative defense that is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152, 165–66 (1996). If the defense is raised, it is the petitioner's burden to raise cause and prejudice or actual innocence; if not raised by the petitioner, the court need not consider the defaulted claim. *Kornahrens v. Evatt*, 66

F.3d 1350 (4th Cir. 1995).  Here, Respondent contends Ground One is procedurally

barred.  [Doc. 21 at 15–18.]  Respondent also argues Petitioner cannot overcome the

default of these grounds because he cannot establish cause and prejudice or a

miscarriage of justice.  [*Id.*]  The Court disagrees.

In Ground One, Petitioner raises the following claim:

**GROUND ONE:**    A Brady violation

*Supporting facts*:    I was found guilty during my jury trial January 7–8,
2003.  My co-defendant was found not guilty during his
jury trial April 21–22, 2004.  Officer Larry Thompson
was subpoenaed during my co-defendant[']s trial to
testify of the exculpatory evidence taken from the victim
on the crime scene September 1, 2001.  Officer Larry
Thompson's testimony caused Detective Berley
McDaniels to testify to the truth during my co-
defendant[']s trial, that he knew of the exculpatory
evidence taken from the victim on the crime scene.
Detective Berley McDaniels testified against me in
2003, but he did not disclose the withheld evidence.

[Doc. 1.]  In the petition for writ of certiorari to the Supreme Court of South Carolina,

Petitioner raised the issue,

I.    Whether the PCR court erred in using an after
discovered evidence test on <u>Brady</u> violations at
petitioner's trial where two policemen failed to
disclose that witnesses at the scene identified
the suspects of a home invasion as being from
Edgemoor in Chester County when petitioner
was from Rock Hill in York County?

[Doc. 21-10 at 3.]  In his response in opposition to the motion for summary judgment,

Petitioner states, "it is due to my inexperience in the law, that I did not raise this same issue

within my federal habeas application . . . it was due to my inexperience in the law."  [Doc.

31 at 4.]  Petitioner further states, "I ask this court, to please, [a]llow me to present the

15

issue (Ground) of my appeal from the denial of my PCR" and restates the issue as the same issue presented in the petition for writ of certiorari to the Supreme Court of South Carolina.  [*Id.* at 7, 9.]  Liberally construing the Petition, as the Court must do, the Court considers the claim raised here to be the same as the claim raised in the petition for writ of certiorari—"Whether the PCR court erred in using an after discovered evidence test on Brady violations at petitioner's trial where two policemen failed to disclose that witnesses at the scene identified the suspects of a home invasion as being from Edgemoor in Chester County when petitioner was from Rock Hill in York County?"  Accordingly, because the claim was raised to the Supreme Court of South Carolina, this Court will address the merits of this claim.

**Merits of Grounds One and Two**

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts before the court, *id.* § 2254(d)(2).  The Supreme Court has held the "contrary to" and "unreasonable application of" clauses present two different avenues for relief.  *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses independent meaning.").  The Court stated there are two instances when a state court decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts

16

> that are materially indistinguishable from a decision of this
> Court and nevertheless arrives at a result different from our
> precedent.

*Id.* at 405–06.  On the other hand, a state court decision is an unreasonable application

of Supreme Court precedent when the decision "correctly identifies the governing legal rule

but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08; *see*

*also Richter*, 131 S. Ct. at 786 ("Under § 2254(d), a habeas court must determine what

arguments or theories supported or, as here, could have supported, the state court's

decision; and then it must ask whether it is possible fairminded jurists could disagree that

those arguments or theories are inconsistent with the holding in a prior decision of this

Court. . . . It bears repeating that even a strong case for relief does not mean the state

court's contrary conclusion was unreasonable.").  Finally, a decision cannot be contrary to

or an unreasonable application of Supreme Court precedent unless applicable Supreme

Court precedent exists; without applicable Supreme Court precedent, there is no habeas

relief for petitioners.  *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart*

*v. Chandler*, 446 F.3d 721, 724 (7th Cir. 2006); *Simpson v. Battaglia*, 458 F.3d 585, 597

(7th Cir. 2006)); *see Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

### Ground One

As stated, at the request of Petitioner, the Court has construed ground one to raise

the issue, "Whether the PCR court erred in using an after discovered evidence test on

Brady violations at petitioner's trial where two policemen failed to disclose that witnesses

at the scene identified the suspects of a home invasion as being from Edgemoor in

Chester County when petitioner was from Rock Hill in York County?"  The Court finds this

17

Ground to be without merit because the PCR court did not apply the after discovered evidence test to the allegation regarding a *Brady* violation.[5]

A review of the PCR court's order of dismissal reveals that the PCR court did not rule on the *Brady* violation issue. Although the PCR court noted that Petitioner testified at the hearing that the State committed a *Brady* violation by failing to disclose the information garnered by Officer Larry Thompson ("Thompson") [App. 372], the Court did not specifically rule on the alleged *Brady* violation. Instead, the court ruled on Petitioner's ineffective assistance of counsel allegations related to counsel's failure to subpoena Thompson, counsel's statements during closing, and counsel's failure to object to the prosecution's closing. [App. 377–78.] The PCR court also analyzed and ruled on Petitioner's allegations regarding the information from Thompson as a request for a new trial based on the discovery of this information as after discovered evidence, and found that Petitioner could not show that the information would have changed the trial result; therefore, Petitioner could not establish the elements required for a new trial based on after discovered evidence. [*Id.*] Nowhere in the findings of fact and conclusions of law or the conclusion section of the PCR court order did the PCR court mention the alleged *Brady* violation or the elements required to establish a *Brady* violation. [App. 376–79.] Thus, the PCR court did not apply the after discovered evidence test to Petitioner's claim regarding a *Brady* violation; therefore, Petitioner is not entitled to habeas corpus relief on this ground as it is

_____

[5] In *Brady v. Maryland*, 373 U.S. 83, 87(1963), the Supreme Court "held that when a State suppresses evidence favorable to an accused that is material to guilt or to punishment, the State violates the defendant's right to due process, 'irrespective of the good faith or bad faith of the prosecution.'" *Cone v. Bell*, 556 U.S. 449, 451 (2009) (citing *Brady*). To prove a *Brady* violation, a petitioner must demonstrate that evidence was (1) favorable to him; (2) in the possession of or known by the prosecution, but nevertheless suppressed by the State; and (3) material to his guilt or innocence or was impeaching. *E.g.*, *Strickler v. Greene*, 527 U.S. 263, 280–81 (1999).

raised to this Court and was raised to the Supreme Court of South Carolina.[6]  Accordingly,

Respondent's motion for summary judgment should be granted with respect to this ground.

### Ground Two

In Ground Two, Petitioner argues his trial counsel was ineffective for failing to

investigate and subpoena Thompson to testify on Petitioner's behalf.  The Court finds this

ground to be without merit.

When evaluating a habeas petition based on a claim of ineffective assistance of

counsel, assuming the state court applied the correct legal standard—the Supreme Court's

holdings in *Strickland v. Washington*, 466 U.S. 668 (1984)—"[t]he pivotal question is

whether the state court's application of the *Strickland* standard was unreasonable.  This

is different from asking whether defense counsel's performance fell below *Strickland*'s

---

[6]To the extent Petitioner was attempting to challenge the PCR court's order regarding the *Brady* violation allegation more generally in the petition for writ of certiorari and here, such claim would be procedurally barred because, as stated,  the *Brady* violation claim was not specifically addressed in the PCR court's order of dismissal.  Petitioner failed to file a Rule 59(e) motion to preserve for appeal any of these issues that were not addressed by the PCR court; therefore, they are procedurally barred from federal habeas review, *see Marlar*, 653 S.E.2d 266, absent a showing of cause and actual prejudice, which Petitioner does not argue.

Moreover, although the PCR court made a factual finding that is unreasonable in stating, "This Court finds these statements were not withheld by the prosecution or by law enforcement" [App. 377], when the record shows the information was in the possession of the police, *see State v. Kennerly*, 503 S.E.2d 214, 220 (Ct. App. 1998) (citing *Kyles v. Whitley*, 514 U.S. 419 (1995)) (stating the *Brady* disclosure rule extends to evidence that is not in the actual possession of the prosecution but known by others acting on the government's behalf in the particular case, including the police), again the PCR court did not make any findings or conclusions with respect to the alleged *Brady* violation but instead addressed the claim as one of ineffective assistance of counsel for failing to subpoena Thompson to gather the information.  Additionally, even if the Court were to address the underlying *Brady* violation claim, the Court is not convinced Petitioner could meet the third prong of the *Brady* test, that the information is material, given that the victim identified Petitioner as the shooter in a police statement given shortly after the shooting and in court, an additional witness identified Petitioner as the shooter, and another witness testified that Petitioner boasted about shooting the victim and given the PCR court's findings that Petitioner's co-defendant, who was found not guilty, had a much stronger defense case than Petitioner.  *See Kyles*, 514 U.S. at 434 (stating that the test for whether evidence is material under *Brady* is whether, in the evidence's absence, the defendant "received a fair trial, understood as a trial resulting in a verdict worthy of confidence").

standard."[7]  *Richter*, 131 S.Ct. at 785.  "A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself."  *Id.*; *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas").  Even if a state court decision questionably constitutes an unreasonable application of federal law, the "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Richter*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Thus, in such situations, the habeas court must determine whether it is possible for fairminded jurists to disagree that the arguments or theories supporting the state court's decision are inconsistent with Supreme Court precedent.  *Id.*

Here, the PCR court evaluated counsel's performance under the standard set forth in *Strickland*.  [App. 375–79.]  The PCR court found,

> This Court finds trial counsel's testimony is credible, but the Applicant's testimony lacks credibility.  The Applicant's primary allegations center on the victim's supposed statements at the scene indicating he was shot by some men from Edgemoor, South Carolina.  This Court finds these statements were not withheld by the prosecution or by law enforcement.  It appears the statements were one of many made at a scene

___

[7]In *Strickland*, the Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result.  466 U.S. at 687.  To satisfy the first prong, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688. To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 692. The Supreme Court has cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.

described as "chaotic" and "hysterical." This Court finds the failure to include this statement in the incident report was the result of a mere oversight and did not rise to the level of misconduct. The Applicant also testified counsel's failure to uncover these statements amounted to ineffective assistance of counsel. Counsel testified he investigated the case thoroughly. This Court finds counsel's assessment to be accurate and believes his investigation was adequate. Counsel did not uncover the existence of this statement because they were not included in any discovery and he had no reason to know of their existence. Counsel interviewed officers from the scene and was never informed of the Edgemoor statement. As a result, Counsel's failure to subpoena Thompson was not ineffective where he had no reason to believe Thompson had additional beneficial testimony. This Court further finds the Applicant's co-defendant had a much stronger defense case than the Applicant. The co-defendant's acquittal cannot be attributed to the inclusion of the Edgemoor statements at his trial and the Applicant failed to show otherwise. As a result, this Court denies and dismisses these allegations.

\*\*\*

Therefore, this Court finds that the Applicant failed to carry his burden to show that trial counsel's representation fell below the standard of professional reasonableness for a criminal defense attorney in this regard. Strickland v. Washington; Cherry v. State. The Court finds that the Applicant cannot satisfy either requirement of the Strickland test.

[*Id.*] The PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. Thus, the Court concludes the PCR court's decision was not contrary to or an unreasonable application of

applicable Supreme Court precedent. Therefore, Petitioner is not entitled to habeas corpus relief on this ground, and Respondent's motion for summary judgment should be granted with respect to this ground.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Respondent's motion for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

July 29, 2014
Greenville, South Carolina